## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **CALEB MCGILLVARY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 5:24-CV-81 (CAR)** |
| **GREG HARTLEY; CHASE HUGHES;** | : | |
| **BODYLANGUAGETACTICS.COM;** | : | |
| **SCOTT ROUSE; and IDEA BANG,** | : | |
| **LLC;** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Caleb McGillvary, proceeding *pro se*, filed this suit against Defendants Greg Hartley, Chase Hughes, Scott Rouse, Bodylanguagetactics.com, and Idea Bang, LLC alleging Defendants infringed on his copyright and trademark rights by using his name, image, voice, likeness, and marks "Kai the Hitchhiker," "Kai the Hatchet Wielding Hitchhiker," the "Hatchet Wielding Hitchhiker," and "Smash, Smash, SUH-MASH," and defamed his character. Having considered the pleadings, the parties' arguments, and relevant legal authority, Defendants' Motion for Judgment on the Pleadings [Doc. 54] is **GRANTED**. Because Plaintiff can allege no other facts to state viable claims, any

1

amended complaint would be futile, and thus, Plaintiff's Amended Complaint is hereby

**DISMISSED WITHOUT LEAVE TO AMEND**.[1]

## BACKGROUND

*Pro se* Plaintiff Caleb McGillvary is currently serving a 57-year sentence for first-degree murder. In February, 2013, McGillvary rose to internet fame as the "hatchet wielding hitchhiker" after he gave interviews to a local Fresno, California KMPH Fox News TV reporter in which McGillvary described "smash, smash, suh-mash[ing]" Jett Simmons McBride three times over the head with a hatchet after McBride crashed his car into a group of pedestrians and attacked bystanders at the scene ("KMPH Clip"). Fresno authorities concluded that Plaintiff used justifiable force in protection of the bystanders and cleared him of any wrongdoing. Three months later, after gaining media notoriety for viral news interviews and media appearances, including an interview on Jimmy Kimmel Live!, Plaintiff was arrested for and ultimately convicted of murdering Joseph Galfy, Jr., a New Jersey attorney. Plaintiff's arrest was unrelated to the hatchet incident. On January 10, 2023, Netflix released a documentary about McGillvary entitled *The*

---

[1] Because Plaintiff's Amended Complaint is dismissed, Plaintiff's Motions for Issuance of Subpoena [Doc. 45] and Motions for Extension of Time to Complete Discovery [Docs. 61 & 63] are **MOOT**. Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Judgment on the Pleadings [Doc. 60] is **GRANTED**, and the Court has considered Plaintiff's untimely response [Doc. 71]. Plaintiff's "Motion Under Rule 12(f), Rule 12(e), and Rule 8(b) [Doc. 52] is **DENIED**. Plaintiff seeks to strike Defendants' additional affirmative defenses pled in their First Amended Answer to Plaintiff's Amended Complaint and seeks to have Defendants file a more definite statement. But Defendants are allowed to plea additional affirmative defenses in their First Amended Answer, and their defenses are sufficient as a matter of law.

*Hatchet Wielding Hitchhiker* that described his background; interviewed those around him during his rise to fame; and detailed his subsequent murder conviction (the "Documentary").[2] Five days before the Documentary was released, on January 5, 2023, Defendants created and published an episode on their YouTube channel, "The Behavior Panel," wherein they analyzed the KMPH Clip and made statements about Plaintiff based on their assessment of his body language and behavior (the "YouTube Video").[3] This suit arises out of the comments made in the YouTube Video.

The day of the hatchet incident in 2013, Plaintiff, who described himself as a homeless "professional street performer,"[4] was hitchhiking around Bakersfield, CA when Jett Simmons McBride picked him up. The two drove to Fresno, picked up a bag of marijuana, and shared a joint at a nearby recycling center. As they were driving away from the recycling center, McBride made a comment to Plaintiff about how he previously "confessed to raping a 14-year-old girl."[5] Eventually, "with both hands on the steering wheel," McBride "intentionally crashed his car into a crowd of power line workers,"

---

[2] *The Hatchet Wielding Hitchhiker*, Netflix (Dec. 22, 2023), https://www.net-flix.com/watch/81436777.

[3] [Doc. 56]. Because Plaintiff does not dispute the authenticity of the YouTube Video, the YouTube Video is central to Plaintiff's claims, and the YouTube Video is incorporated by refence in Plaintiff's original and Amended Complaints, the Court may consider the video in ruling on the Motion for Judgment on the Pleadings. *See Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277 (11th Cir. 2023); *McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020); *Moya v. City of Alpharetta*, Case No. 1:22-CV-02942-ELR, 2023 WL 6620373, at *4 (N.D. Ga. Sept. 27, 2023).

[4] Am. Compl., p. 35, ¶ 53.

[5] *Id.* at p. 6, ¶2(k).

pinning one worker with the car.[6] McBride got out of the car, grabbed a bystander in "a

bear hug … escalating force against her."[7] Plaintiff exited the passenger seat of McBride's

vehicle and warned McBride to let the bystander go, to which McBride yelled, "I will kill

you all."[8] Plaintiff then used his "camping hatchet" to strike McBride "three times with

force on McBride's head in defense" of the bystander.[9] Eventually, law enforcement

officers came to scene and determined that Plaintiff "used justified force in defense of

others; was cleared of any wrongdoing in the incident; and was released without any

charges or reprimands."[10]

That same day, Plaintiff gave an interview to KMPH Fox News that went viral. In

the interview, Plaintiff stated he "smash, smash, SUH-MASH[ed]" McBride's head.[11]

Plaintiff admits he became "widely known and recognized as the 'Hatchet Hitchhiker'

because of his heroic acts" and made other public appearances including on Jimmy

Kimmel Live!.[12] Indeed, Plaintiff admits he "is famous and widely recognized for his

name, voice, likeness, and unregistered marks 'Kai the Hitchhiker'; 'Kai the Hatchet

Wielding Hitchhiker'; 'The Hatchet Wielding Hitchhiker'; and 'Smash, Smash, Smash!';

---

[6] *Id.* at p. 4, ¶2(a).

[7] *Id.* at p. 5, ¶2(c).

[8] *Id.* at p. 5, ¶2(b).

[9] *Id.* at p. 5, ¶2(c).

[10] *Id.* at p. 5, ¶2(i).

[11] *Id.* at p. 8, ¶3.

[12] *Id.* at p. 9, ¶¶4 and 6.

and for his distinguishing devices of hairstyle, garb, performance, and body appearance in the February 1, 2013 interview."[13]

After these events, Plaintiff was convicted of homicide in connection with an unrelated incident in New Jersey, which he states was in response to having been "drugged" and "sexually assaulted."[14] He is currently serving a 57-year prison sentence in New Jersey as a result of his conviction.[15]

Plaintiff alleges Defendants Scott Rouse, Greg Hartley, and Chase Hughes (the "Individual Defendants") are employed by, and/or officers of Defendants Idea Bang, LLC and bodylanguagetactics.com.[16] Defendants maintain the YouTube channel "The Behavior Panel" where "[t]hey analyze body language and human behavior in videos of public interest," and hold themselves out as "[t]he world's top body language and behavioral analysis experts."[17] Defendant Scott Rouse is "a body language and expert analyst" who "train[s] law enforcement in the military interrogation and body language" and "created the number one online body language course, 'bodylanguage.com[.]'"[18] Defendant Greg Hartley is "a former army interrogator/ interrogation instructor/ resistance to interrogation instructor" and has "written 10 books on body language and

---

[13] *Id*. at p. 10, ¶11.
[14] *Id*. at p. 23; *see also New Jersey v. McGillvary*, 2021 WL 3378024 (N.J. App. Aug. 4, 2021).
[15] *McGillvary*, 2021 WL 3378024.
[16] Defendants Idea Bang, LLC and bodylanguagetactics.com note they are improper parties to this action but do not make any legal arguments seeking dismissal on such basis.
[17] www.youtube.com/c/TheBehaviorPanel; Am. Compl., p. 19.
[18] Am. Compl. p. 19.

behavior."[19] Defendant Chase Hughes has "20 years in the US military" and "published the number one bestselling book in behavioral profiling, influence, and persuasion."[20]

On January 5, 2023, the Individual Defendants published a video on their YouTube channel wherein they analyzed the KMPH Clip and made statements about Plaintiff based on their assessment of his body language and behavior (the "YouTube Video").[21] To view the YouTube Video, users had to click on an image of Plaintiff's face with the words "Hatchet Hitchhiker Body Language."[22] Defendants advertised their YouTube Video on YouTube.com, Google.com, Bing.com, MSN.com, Yahoo.com, and "host of other search engines."[23] Plaintiff alleges Defendants are paid pursuant to a monetized partnership with YouTube and/or Google AdSense in which they are paid approximately $3.40 per 1000 video views on each of their monetized videos.[24]

Plaintiff filed suit against Defendants bringing claims for trademark infringement, copyright infringement, racketeering, and defamation from Defendants' creation and posting of the YouTube Video. Plaintiff claims on February 1, 2013, he "created the

---

[19] *Id.* at pp. 19-20.

[20] *Id.* at p. 19.

[21] [Doc. 56]. Because Plaintiff does not dispute the authenticity of the YouTube Video, the YouTube Video is central to Plaintiff's claims, and the YouTube Video is incorporated by refence in Plaintiff's original and Amended Complaints, the Court may consider the video in ruling on the Motion for Judgment on the Pleadings. *See Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277 (11th Cir. 2023); *McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020); *Moya v. City of Alpharetta*, Case No. 1:22-CV-02942-ELR, 2023 WL 6620373, at *4 (N.D. Ga. Sept. 27, 2023).

[22] Am. Compl., p. 9, ¶ 4 [Doc. 44].

[23] *Id.*

[24] *Id.* at p. 11, ¶ 18.

copyright protected spoken words work 'Smash, Smash, SUH-MASH!' and dramatic work 'Smash, Smash, SUH-MASH!'… and performed th[o]se works in [the KMPH Clip]."[25] Plaintiff alleges Defendants "violated [his] copyrights and used Plaintiff's name, voice, likeness, and marks to falsely endorse their products and services in the same video they slandered him."[26] Defendants now move for judgment on the pleadings to dismiss Plaintiff's claims in their entirety.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[27] "Judgment on the pleadings is appropriate where there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."[28]  The court analyzes a motion for judgment on the pleadings using "the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."[29] In applying this standard, "all well-pleaded facts are accepted as true, and the reasonable inferences therefore are construed in the light most favorable to the

---

[25] *Id.* at p. 5, ¶ 2(j).

[26] *Id.* at pp. 3-4, ¶ 1.

[27] Fed. R. Civ. P. 12(c).

[28] *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.").

[29] *King v. Akima Global Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)).

plaintiff."[30]

When considering a motion for judgment on the pleadings, the Court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the non-movant.[31]  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."[32]  A complaint will survive judgment on the pleadings if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33]

## DISCUSSION

### 1.  Defamation

Plaintiff cannot maintain his Georgia state law defamation claim as a matter of law because Defendants' alleged defamatory statements are opinions, subjective assessments of Plaintiff, and rhetorical hyperbole for which they cannot be held liable. Generally, "the question whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury. However, if the statement is not

---

[30] *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

[31] *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

[32] *Long v. Fulton Cnty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011) (internal quotation omitted).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

ambiguous and can reasonably have but one interpretation, the question is one of the law [left to the judge]."[34]

Plaintiff alleges Defendants made 28 "slanderous and libelous statements with reckless disregard for and/or knowledge of their falsity, with actual malice intending the harm that would result therefrom."[35] Defendants' allegedly defamatory statements include telling viewers they will analyze Plaintiff's body language and behavior from the News Clip to determine whether Plaintiff is a "sociopath" or "psychopath"'; commenting on Plaintiff's "odd behavior for someone who's killed somebody in the last three hours"; questioning whether Plaintiff has a "personality disorder" and lacks language and relationship skills; questioning the relationship between Plaintiff and McBride, the driver of the car, "be it a drug deal, be it a prostitution situation, whatever was happening there"; commenting that Plaintiff was trying to be a "hero"; calling Plaintiff a "drifter" and a "vigilante"; suggesting because Plaintiff stated in the News Clip he was from "Dogtown," Plaintiff was "kind of suggesting that he's a mutt out of the back streets . . . a bit of a mongrel from the backstreets"; opining that Plaintiff "probably has done some things. We know he gets convicted of murder later …. I don't think what we're seeing here is the Johnny Appleseed of goodness running around the country beating up bad guys. I think this was opportunistic…. I'm not sure whether this is a true story of being a

---

[34] *Cox Enters., Inc. v. Nix,* 274 Ga. 801, 803 (2002).
[35] Am. Compl., p. 13.

savior or it was an opportune moment to be violent with somebody, if it indeed happened"; opining Plaintiff has "been in a whole lot more trouble than we're aware of at this point with local authorities"; stating he was accused of "killing a guy he had consensual sex with"; and opining that Plaintiff and McBride got into a fight before McBride ran into the crowd of people. Plaintiff contends Defendants' analysis falsely implies that he is a sociopath or psychopath; he killed someone within three hours before the news interview; he lacks the interpersonal skills, language capacity, and intelligence that would make him a good business partner or leader; he was criminally culpable in his use of force on McBride; he lied about the events and therefore committed perjury at McBride's arraignment; he is "some kind of glory hog who interjected himself into the interviewer's dialogue in an act of self-aggrandizement"[36]; that people did not like him because he was a drifter; he promoted vigilantism; he was a prostitute who engaged in a "prostitution situation" with McBride[37]; that his identity is synonymous with that of a mutt or mongrel from the backstreets; and that he engaged in a pattern of criminal activity before the incident.

Under Georgia law, "a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special

---

[36] Am. Compl., p. 15.
[37] Id. at p. 18.

harm or the actionability of the statement irrespective of special harm."[38] "Truth is an absolute defense under Georgia law: if plaintiff cannot prove falsity, the libel and slander claim must fail."[39] Substantial truth is all that is required. "[M]inor factual errors which do not go to 'the substance, the gist, the sting' of the story" are not actionable.[40]

"A defamation action will lie only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false."[41] "An assertion that cannot be proved false cannot be held libelous …, however unreasonable or vituperous the expressing of it may be."[42] "A statement of opinion may be actionable, then, if it 'can reasonably be interpreted as stating or implying defamatory facts about plaintiff' and is capable of being proven false."[43]

"The test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published."[44] Here, given the context

---

[38] *Am. C.L. Union, Inc. v. Zeh*, 312 Ga. 647, 650 (2021) (quoting *Mathis v. Cannon*, 276 Ga. 16, 20-21 (2002)).

[39] *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1349 (N.D. Ga. 2003).

[40] *Stange v. Cox Enter., Inc.*, 211 Fa. App. 731, 734 (1994).

[41] *Swanson Towing & Recovery, LLC v. Wrecker I, Inc.*, 342 Ga. App. 6, 10 (2017).

[42] *Johnson v. Lindsay Pope Brayfield & Associates, Inc.* 364 Ga. app. 656, 661-62 (2022) (quoting *Gast v. Brittain*, 277 Ga. 340, 341 (2003)).

[43] *Id.* (quoting *Bryant v. Cox Enterprises*, 311 Ga. app. 230, 235 (2011)).

[44] *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 558 (2005) (internal quotation marks and citation omitted); *see also Feldt*, 304 F.3d at 1131 (noting the court must "consider the circumstance in which the statement was expressed"); *Bryant v. Cox Enterprises*, 311 Ga. App. 230, 238 (2011) ("[T]hese statements cannot be considered in isolation to determine whether they are true or false. Rather, we must construe

of the entire video, Defendants' statements are clearly opinions based on their subjective assessments of Plaintiff's body language and behavior in the News Clip. None of Defendants' allegedly defamatory comments could be proved false.

Moreover, the "Supreme Court has long recognized 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'"[45] Although "that debate may well include vehement, caustic, and sometimes unpleasantly sharp attacks, the [Supreme] Court nevertheless has decided that such attacks are constitutionally protected[,] and those who make them are exempt from liability for defamation if the attacks are simply 'rhetorical hyperbole.'"[46] Constitutionally protected "rhetorical hyperbole reflects the reality that exaggeration and non-literal commentary have become an integral part of social discourse."[47]

Here, the context of Defendants' statements establish that they are rhetorical hyperbole. All reasonable viewers understand Defendants' comments as expressing their beliefs about Plaintiff's actions based on their subjective assessments of his body language actions, not as literal assertions. Thus, Plaintiff's defamation claims are hereby DISMISSED WITHOUT LEAVE TO AMEND.

---

each statement in the context of the entire writing to assess the construction placed upon it by the average reader.").

[45] *Horsley v. Feldt*, 304 F.3d 1325, 1331 (11th Cir. 2002) (quoting *New York Times v. Sullivan*, 376 S. 254, 270 (1964)).

[46] *Id.* (internal quotation marks and citations omitted).

[47] *Id.* (internal quotation marks and citations omitted).

2. **False Light Invasion of Privacy**

Plaintiff also cannot maintain a claim for false light invasion of privacy under Georgia law. Because Defendants' statements are constitutionally protected rhetorical hyperbole, they cannot form the basis of a claim for false light invasion of privacy under Georgia law.[48] Plaintiff's false light invasion of privacy claims are DISMISSED WITHOUT LEAVE TO AMEND.

3. **Misappropriation of Likeness**

Plaintiff also brings a claim for a violation of his "right to publicity," which arises out of a constitutional right of privacy.[49] "Georgia recognizes a right of publicity to protect against 'the appropriation of another's name and likeness … without consent and for the financial gain of the appropriator … whether the person whose name and likeness is used is a private citizen, entertainer, or … a public figure who is not a public official.'"[50] But "the right of publicity does not attach to that which is open to public observation. Accordingly, the right of publicity must attach to that which is not open to public observation and is appropriated for the commercial benefit of another."[51] The question is

---

[48] *See S&W Seafoods Co. v. Jacor Broadcasting of Atlanta*, 94 Ga. App. 233, 237 (1989); *Monge v. Madison County Record, Inc.*, 802 F. Supp. 2d 1327, 1337 (N.D. Ga. 2011).
[49] *See Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (1905).
[50] *Toffoloni v. LFP Publishing Group, LLC*, 572 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Martin Luther King, Jr. Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135 (1982)).
[51] *Id.* at 1207 (internal quotation marks and citation omitted).

"whether the information disclosed was public rather than private—whether it was generally known and, if not, whether the disclosure [was made] to the public at large."[52]

"In order to navigate between the competing constitutionally protected rights of privacy and publicity and the rights of freedom of speech and of the press, the courts have adopted a 'newsworthiness' exception to right of publicity."[53] "[W]here an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy."[54] "[W]here a publisher may be precluded by the right of publicity from publishing one's image for purely financial gain, as in an advertisement, where the publication is newsworthy, the right of publicity gives way to freedom of the press."[55]

There are several factors that a court may consider in determining whether a particular fact qualifies as newsworthy: (1) "the depth of the intrusion into the plaintiff's private affairs"; (2) "the extent to which the plaintiff voluntarily pushed himself into a position of public notoriety"; and (3) "whether the information is a matter of public record."[56]

---

[52] *Id.* at 1207 n.1.
[53] *Id.* at 1208.
[54] *Waters v. Fleetwood*, 212 Ga. 161 (1956).
[55] *Toffoloni*, 572 F.3d at 1208.
[56] *Id* at 1208 n.2.

Here, all factors weigh against Plaintiff and establish that he cannot maintain a claim for a violation of his right to publicity as a matter of law. The YouTube Video did not intrude on Plaintiff's private affairs; Plaintiff voluntarily placed himself in the position of public notoriety; and the information is a matter of public record. Defendants analyzed the KMPH news Clip, a matter of public record that Plaintiff acknowledges in his Amended Complaint went viral. There can be "no liability when the defendant merely gives further publicity to information about the plaintiff which is already public."[57] Plaintiff voluntarily placed himself before the public, allowing the news reporter to interview him and later voluntarily appearing on the late-night television show Jimmy Kimmel Live!. Indeed, Plaintiff acknowledges in his Amended Complaint that he is "famous and widely recognized."

Plaintiff contends Defendants used his identity solely to further their own commercial efforts to market their YouTube channel and sell its products. But, having analyzed the Video, it is clear Plaintiff's identity is not being used to sell a product in an advertisement. Defendants do not use Plaintiff's identity on merchandise. And any use of Plaintiff's identity to attract web traffic to Defendants' YouTube channel is merely incidental to the use of Plaintiff's identity. Defendants do not use Plaintiff's identity to endorse or sell their products. The "fact that the publisher or other user seeks or is

---

[57] *Cox Commc'ns. Inc. v. Lowe*, 173 Ga. App. 812, 814 (1985) (quoting *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494 (1975)).

successful in obtaining a commercial advantage from an otherwise permitted use of another's identity does not render the appropriation actionable."[58] Plaintiff's misappropriation of likeness claims are DISMISSED WITHOUT LEAVE TO AMEND.

### 4. <u>Lanham Act Claims</u>

Plaintiff contends Defendants engaged in trademark infringement, including false endorsement, false claim of association, and false designation of origin, under the Lanham Act by using Plaintiff's "marks, name, voice, and/or likeness" in connection with their YouTube Video. Specifically, Plaintiff alleges his likeness, the words "Smash, smash, SUH-MASH!," and moniker "Kai the Hatchet Wielding Hitchhiker" are trademarks in which he has registered and common law trademark rights that Defendants unlawfully are infringing by using them in the following manner: to advertise the sale of pay per click and pay per view advertisement services on their YouTube channel; by clicking their YouTube Video "viewers will be directed to a product of, or endorsed by or affiliated with, Kai the Hatchet Wielding Hitchhiker"; and to advertise their books and consulting services.

Plaintiff's trademark infringement claims under the Lanham Act must be dismissed without leave to amend because Plaintiff cannot prove a likelihood of confusion as a matter of law. "Trademark infringement under the Lanham Act occurs

---

[58] *Somerson v. World Wrestling Entertainment, Inc.*, 965 F. Supp. 2d 1360, 1370 (N.D. Ga. 2013) (citing Restatement (Third) of Unfair Competition § 47, comment c).

when a defendant, without consent, uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' that 'is likely to cause confusion' that a relationship exists between the parties."[59] "Trademark law, as codified by the Lanham Act, *see* 15 U.S.C. § 1051 *et seq.*, largely serves two significant but often conflicting interests. It 'secure[s] to the owner of the mark the goodwill of his business[;]' and it 'protect[s] the ability of consumers to distinguish among competing producers.'"[60] A plaintiff seeking to prevail on a trademark infringement claim must show: (1) the existence of a valid trademark; and (2) defendant's adoption of an identical or similar mark causing consumer confusion between the two marks.[61]

"Trademarks convey to purchasers a variety of information, and when a competitor's use of the same or similar marks interferes with this informational function, trademark infringement is established."[62] "Unlike the general prohibition against unauthorized copying that exists in patent and copyright law, the touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion."[63] "Confusion as to the source is the bête noire of trademark law—the thing that stands

---

[59] *FCOA LLC v. Foremost Title & Escrow Srvcs., LLC*, 57 F.4th 939, 946 (11th Cir. 2023) (

[60] *Savannah College of Art and Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1260 (11th Cir. 2017) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985)).

[61] *See, e.g., Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797 (11th Cir. 2003).

[62] *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 389 (5th Cir. 1977).

[63] *Custom Mfg. and Eng'g, Inc. v. Midway Serv., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (internal citation omitted).

directly opposed to the law's twin goals of facilitating consumers' choice and protections producers' good will."[64]

"In the Eleventh Circuit, a false endorsement claim under the Lanham Act is treated the same as a trademark infringement or false association claim."[65] To prove he is entitled to relief on this claim, Plaintiff must allege: "(1) [he] had trademark rights in the mark or name at issue and (2) that Defendants had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."[66] To assert trademark rights, a plaintiff need not have registration; instead, it is sufficient to allege the mark is sufficiently distinctive.[67]

To prevail on his claim for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must establish that Defendants used in commerce, in connection with any goods or services, "any word, term, name, symbol or device, or any combination thereof, or any false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of Defendants with Plaintiff, or "as to the origin, sponsorship, or approval of" Defendants' goods, services, or commercial activities by the Plaintiff.[68] The test for liability for false

---

[64] *Id.* (citing *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003); 4 McCarthy § 23:5).

[65] *Gibson v. BTS N., Inc.*, 2018 WL 888872, at 5 (S.D. Fla. Feb. 14, 2018) (citing *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act.")).

[66] *Id.* (internal quotation marks and citation omitted).

[67] *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).

[68] *See* 15 U.S.C. § 1125(a)(1).

designation of origin under § 1125(a) is the same as for a trademark infringement claim—that is, whether the public is likely to be deceived or confused by the similarity of the marks at issue.[69]

Even assuming Plaintiff has a trademark ownership in the words "Smash, Smash, SUH-MASH!" and/or the moniker "Kai the Hatchet Wielding Hitchhiker," Plaintiff cannot show consumers were likely to believe that Plaintiff approved, sponsored, was affiliated, or was the origin of the YouTube Video. The YouTube Video is not a copy of Plaintiff's work. Defendants used the public KMPH news Clip to analyze Plaintiff's body language and behavior.

The Eleventh Circuit considers seven factors when determining whether there is a likelihood of confusion for purposes of an infringement claim: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion."[70] Under Eleventh Circuit precedent, actual confusion in the

---

[69] *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).
[70] *Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *see also Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010).

consuming public is the most "persuasive evidence in assessing likelihood of confusion."[71]

"[L]ikelihood of confusion occurs when a later user uses a trade-name in a manner which is likely to cause confusion among ordinarily prudent purchasers or prospective purchasers as to the source of the product."[72] Plaintiff has not pled nor can he establish that any ordinarily prudent purchaser or prospective purchaser would have any confusion that Plaintiff approved, sponsored, endorsed, was affiliated, or was the source of Defendants' YouTube Video analyzing his body language and behavior.

Plaintiff points to a five-second clip in the YouTube Video, where an image of Plaintiff reenacting his striking motion with his hatchet on the head of McBride while stating "Smash, smash, suh-mash" appears on the screen, and then the Video cuts back to Defendant Chase Hughes stating, "that subscribe button below."[73] But this does not create a likelihood of confusion with the public that Plaintiff in any way endorses or was affiliated with the Video. As Defendants state in their brief, "[i]t is a far stretch of one's imagination that a consumer would be confused that Defendants, who are body language and behavior experts, relied on plaintiff's name, voice, or likeness, who at the time of

---

[71] *Tana*, 611 F.3d at 779 (citing *Alliance Metals, inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)).
[72] *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 126 (11th Cir. 2022) (quotation marks and citation omitted).
[73] Video at 37:29-37:32.

publication of the Video was a convicted murderer … to promote or sell their products or services."[74]

Plaintiff's trademark infringement claims under the Lanham Act are DISMISSED WITHOUT LEAVE TO AMEND.

### 5. <u>Copyright Infringement Claims</u>

Plaintiff alleges he created and performed the "dramatic work and spoken words" he used during the KMPH news interview on February 1, 2013.[75] He alleges he registered his copyright to the "dramatic work 'Smash, Smash, SUH-MASH!'" on January 20, 2023, and February 6, 2023, and "has received a valid certificate of registration from the Register of Copyrights."[76] Plaintiff claims Defendants' use of the KMPH Clip from Plaintiff's media interview with the words "Smash, Smash, SUH-MASH" infringes his copyright. But Plaintiff's claim must be dismissed without leave to amend because he does not own a copyright in the KMPH Clip.

First, Plaintiff's copyright claims are barred by collateral estoppel. To successfully invoke collateral estoppel, a party must demonstrate that: (1) the issue at stake in a pending action is identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior

---

[74] Motion for Judgment on the Pleadings, p. 16 [Doc. 54].
[75] Am. Compl., p. 35, ¶ 54.
[76] *Id.* at pp. 35-36, ¶ 54.

litigation must have been a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.[77]

In 2023, Plaintiff filed a civil action in the Central District of California against Netflix, *McGillvary v. Netflix*, Case No. 2:23-cv-01195-JLS-SK, alleging, in pertinent part, that Netflix infringed his copyrights in the KMPH Clip when Netflix used the news interview in its documentary. The Court determined as a matter of law that KMPH, not Plaintiff, was the author and publisher of its interview of Plaintiff as it related to the McBride Affair.[78]

Even if McGillvary's copyright claim is not barred by collateral estoppel, it is foreclosed as a matter of law because he has no ownership in the KMPH Clip. The Copyright Act provides, in part, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) … is an infringer of the copyright or right of the author."[79] A copyright infringement action requires a plaintiff to prove (1) ownership of a valid copyright, and (2) copying by defendants of constituent elements of the work that are original.[80] For the

---

[77] *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003), *overruled on other grounds by Slater v. United States Steel Corp.*, 2017 WL 4110047 (11th Cir. Sept. 18, 2017).
[78] *McGillvary v. Netflix*, Case No. 2:23-cv-01195-JLS-SK, 2024 WL 3588043 (C.D. Cal. July 30, 2024).
[79] 17 U.S.C. §501(a).
[80] *See e.g., Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

first prong, "a plaintiff must prove that the work … is original and that the plaintiff complied with applicable statutory formalities,"[81] and a "certificate of a [copyright] registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."[82] The second prong, the copying element of an infringement claim, has two components: (1) Plaintiff must demonstrate that Defendants copied Plaintiff's work as a factual matter; and (2) Plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected.[83]

As a matter of law, Plaintiff does not own a copyright in the KMPH Clip. "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."[84] A copyrightable "work is 'fixed' in a tangible medium of expression" only when it is captured in a copy that is "sufficiently permanent or stable to permit it to be … communicated for a period of more than transitory duration."[85] Plaintiff was an interview subject of the KMPH news interview. He played no role in fixing the clip into tangible

---

[81] *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)).
[82] 17 U.S.C. § 410(c); *see also Latimer*, 601 F.3d at 1233.
[83] *Latimer*, 601 F.3d at 1233.
[84] *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).
[85] 17 U.S.C. § 101.

expression; KMPH employees "fixed" McGillvary's performance—recording him using KMPH controlled and operated equipment.[86] Plaintiff consented to the live media interview when speaking with the KMPH Fox News reporter, engaging in a question-and-answer format, wherein he recounted the events on February 1, 2013.

That Plaintiff alleges he registered a copyright on January 20, 2023, and February 6, 2023, for his spoken words "Smash, Smash, SUH-MASH" does not save his claim. The KMPH Clip first aired approximately ten years before on February 1, 2013. A certificate of registration issued before or within five years after the first publication of the work constitutes prima facie evidence of the validity of the copyright.[87] Plaintiff's registration of the alleged copyright is outside the statutory period.

Because McGillvary lacks copyright ownership in the KMPH Clip as a matter of law, his copyright infringement claim is DISMISSED WITHOUT LEAVE TO AMEND.

6. **Federal RICO Claim**

---

[86] *See McGillvary v. Netflix, Inc.*, Case No. 2:23-cv-01195, 2024 WL 3588043, *8-9, (C.D. Ca, July 30, 2024) (finding McGillvary is not the owner of the KMPH news clip as a matter of law); *see also Taggart v. WMAQ Channel 5 Chicago*, 2000 WL 1923322 (S.D. Ill. Oct. 30, 2000) (dismissing plaintiff's copyright claim, reasoning that even if the plaintiff's comments were "diverse, distinctive, aberrant, eccentric, odd or bizarre … those expressions simply do not rise to the level of a literary or intellectual creation that enjoys the protection of copyright law." Plaintiff's "comments during the interview were unprepared and spontaneous responses," and the interview proceeded in a "question and answer format, where banter and informal exchanges are likely to occur." And "affording [copyright] protection to materials gathered in the daily task of the news reporter would essentially bring the industry to a halt."); *Garcia v. Google, Inc.*, 786 E.3d 733 (9th Cir. 2015) (plaintiff-actress did not have copyright ownership of her performance in a movie)

[87] *See* 17 U.S.C. § 410(c).  F.3d

24

The federal RICO act makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."[88] To recover under RICO, "a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts."[89] Civil plaintiffs must also establish the defendant's RICO violation caused them to suffer an injury to either their business or property and that the injury was "by reason of the substantive RICO violation."[90]

Plaintiff contends Defendants fraudulently uploaded the KMPH Clip of Plaintiff's interview by wire fraud "to induce reliance by YouTube and Third Parties to Plaintiff's detriment and thus to defraud him."[91] Specifically, he alleges that Defendants Idea Bang, LLC and bodylanguage.com employ the individual Defendants and are RICO enterprises "engaged in [ ] activities which affect  interstate or foreign commerce" and act in concert "through a RICO pattern of activity" "to commit wil[l]ful copyright infringements, fraudulently enter clickwrap agreements so as to upload infringing content and thereby

---

[88] 18 U.S.C. § 1962(c).
[89] *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014).
[90] *Williams v. Mohawk Indus. Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714-15 (11th Cir. 2014).
[91] Am. Compl., p. 32.

defraud money from bidders on advertisements."[92] Plaintiff alleges Defendants' "scheme" injured his business and property interests by depriving him of "his revenues from his copyrights to his dramatic work and spoken words to which he would have otherwise been entitled" and diminishing the value of "his copyright-protected works, Lanham Act endorsement value, and right of publicity[.]"[93]

Plaintiff's conclusory allegations wholly fail to state a RICO claim. And under his factual allegations, Plaintiff can neither show he was "actually injured" or "that the claimed predicate RICO violations were a proximate cause of the injury";[94] thus, he lacks standing to assert this claim, and it must be dismissed without leave to amend. "In order to state civil claim under [the statute], a plaintiff must establish that the alleged injury directly was caused by the RICO violation."[95] "The plaintiff must have been injured in h[is] business or h[is] property by the racketeering conduct constituting the violation, and the damages must flow from commission of the predicate acts."[96] "Thus, 'a party whose injuries result "merely from the misfortunes visited upon a third person by the defendant's acts" lacks standing to pursue a claim under RICO.'"[97]

---

[92] Am. Compl., pp. 29-33.

[93] *Id.* at pp. 32-33.

[94] *Simpson*, 744 F.3d at 704.

[95] *Harris v. Orange S.A.*, 636 Fed. App'x 476, 481 (11th Cir. 2015) (citing *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 906 (11th Cir. 1998)).

[96] *Id.* (citing *Mohawk Indus., Inc.*, 465 F.3d at 1291).

[97] *Id.* (quoting *Bivens*, 140 F.3d at 906) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267 (1992)).

Plaintiff's alleged injuries are based on the diminished value of his alleged copyright, trademarks, and right to publicity. But as found in this order, Plaintiff has no copyright, trademark, or publicity interest in the KMPH Clip or in the Defendants' use of his name, likeness, or words in the YouTube Video. Thus, Plaintiff suffered no actionable injury.

Even if Plaintiff did suffer some kind of actionable injury, his allegations establish his injury did not occur "by reason of" Defendants' alleged wire fraud. "[A] civil RICO plaintiff must always establish a proximate-causal 'direct relation' between the injury and injurious conduct at issue."[98] "To qualify as a direct cause of a plaintiff's injury, a RICO defendant's misconduct must have been a substantial factor in the sequence of responsible causation."[99] "The pattern of RICO predicate acts need not be the 'sole cause' of a plaintiff's injury, but a plaintiff must indisputably show that a defendant's racketeering activity was more than merely a 'but for' cause of harm."[100] Plaintiff alleges that Defendants' scheme, through the use of wire fraud, was "to induce reliance by YouTube and Third Parties thereon to Plaintiff's legal detriment" and "to sell advertisements to Third Parties."[101]

---

[98] *Id.* at 712 (citing *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

[99] *Id.* (internal quotation marks and citations omitted).

[100] *Id.* (citations omitted).

[101] Am. Compl., pp. 32-33.

By his own allegations, Defendant's wire fraud scheme was not to defraud Plaintiff, but to defraud third parties. Thus, the proximate cause of Plaintiff's injuries was not the wire fraud scheme, but Defendants' tangentially related use of his likeness, images, and words. "RICO does not provide a remedy for every injury that may be traced to a predicate act," but instead requires that the act proximately cause plaintiff's injury.[102] Any connection between Defendants' alleged wire fraud and Plaintiff's injury is too tenuous for proximate cause. Thus, Plaintiff has no standing to assert this RICO claim. Plaintiff's RICO claim is DISMISSED WITHOUT LEAVE TO AMEND.

## CONCLUSION

Having considered the pleadings, the parties' arguments, and relevant legal authority, Defendants' Motion for Judgment on the Pleadings [Doc. 54] is **GRANTED**. Because Plaintiff can allege no other facts to state viable claims, any amended complaint would be futile, and thus, Plaintiff's Amended Complaint is hereby **DISMISSED WITHOUT LEAVE TO AMEND**.[103]

---

[102] *O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir. 1989) (citations omitted).

[103] Because Plaintiff's Amended Complaint is dismissed, Plaintiff's Motions for Issuance of Subpoena [Doc. 45] and Motions for Extension of Time to Complete Discovery [Docs. 61 & 63] are **MOOT**. Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Judgment on the Pleadings [Doc. 60] is **GRANTED**, and the Court has considered Plaintiff's untimely response [Doc. 71]. Plaintiff's "Motion Under Rule 12(f), Rule 12(e), and Rule 8(b) [Doc. 52] is **DENIED**. Plaintiff seeks to strike Defendants' additional affirmative defenses pled in their First Amended Answer to Plaintiff's Amended Complaint and seeks to have Defendants file a more definite statement. But Defendants are allowed to plea additional affirmative defenses in their First Amended Answer, and their defenses are sufficient as a matter of law.

**SO ORDERED,** this 30th day of September, 2025.

S/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT